**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | In Proceedings Under Chapter 7 |
| PARAMJITINDER SINGH DHILLON SURINDERJIT KAUR DHILLON, | |
| Debtor(s). | Case No. 10-41700 |
| GEORGE PAPDOPOULOS, JOHN KARAYANIS, EFFIE PAPDOPOULOS, and SUSAN KARAYANIS, | |
| Plaintiff(s), | Adversary No. 11-4015 |
| v. | |
| PARAMJITINDER SINGH DHILLON SURINDERJIT KAUR DHILLON, | |
| Defendant(s). | |

OPINION

This matter is before the Court on a complaint filed by the plaintiffs objecting to the dischargeability of a debt under 11 U.S.C. § 523(a)(6) and objecting to the debtors' discharge under 11 U.S.C. § 727(a)(3). A trial on the complaint was held over a three-day period. After reviewing the pleadings, evidence and the post-trial briefs, the Court makes the following findings of fact and conclusions of law.

FACTS

Plaintiffs John and Susan Karayanis owned certain real estate located in Carbondale, Illinois with a common street address of 717 and 717½ South University Avenue. Prior to December 2006, the plaintiffs used a portion of the property – specifically, 717 South University Avenue - to operate a restaurant known as the Chicago Underground Pub & Grill. On December 2, 2006, John and Susan Karayanis leased the property to an entity known as P.S. & G.R., LLC pursuant to a Lease

1

with Option to Purchase ("lease"). The lease was signed by Paramjitinder Singh Dhillon ("P.J. Dhillon") - one of the debtors/defendants in this case – in his capacity as an officer of P.S. & G.R., LLC.[1] The lease provided that the premises would be used for operating a restaurant and for no other purpose. In addition to the real estate, the plaintiffs agreed to lease certain equipment, personal property, fixtures and trade fixtures to the debtors. The real estate located at 717½ A and 717½ B (rental apartments also owned by John and Susan Karayanis) was not included in the lease.

The lease provided that it would begin on January 1, 2007 and would terminate on January 1, 2008, or on the closing date, if the option to purchase was exercised. According to paragraph III of the lease, the "lease price" of $64,000.00 would be paid as follows: $10,000 at the time of execution of the lease followed by twelve payments of $4,500.00 per month, payable on the first day of each month beginning on January 1, 2007. Pursuant to the terms of the lease, the debtors could purchase the real estate (including the apartments) and the personal property for the sum of $450,000.00 by written notification during the first eleven months of the lease. The debtors' obligation to pay rent would terminate on the closing date should they exercise the option to purchase.

On April 20, 2007, John and Susan Karayanis conveyed their interest in the property at 717 and 717½ South University Avenue to the other named plaintiffs, George and Effie Papdopoulos.[2] On June 28, 2007, the lease was amended to, *inter alia*, 1) add George and Effie Papdopoulos as owners of the property; 2) include the apartments at 717½ South University; 3) change the closing date to December 26, 2007 should the debtors exercise the option to purchase; 4) extend the lease period to July 1, 2008 should the debtors decline the purchase option; and 5) increase the monthly

---

[1] The plaintiffs filed the instant complaint against P.J. Dhillon and Surinderjit Dhillon individually. Neither party addressed the ramification, if any, of P.J. Dhillon signing the lease in his corporate capacity.
[2] According to the testimony at trial, Effie Papdopoulos is the daughter of John Karayanis and George is Effie's husband.

2

lease payment to $5,400.00 (this amount included the lease payment for the apartments). The lease amendment was signed by both P.J. Dhillon and his wife, Surinderjit Kaur Dhillon, on behalf of P.S. & G.R., LLC.  The amendment also contained the following provision:

> If the parties fail to reach an agreement for a new lease, Lessee must vacate the premises no later than July 1, 2008.  All improvements, fixtures, and equipment shall remain on the premises and in working order.  The property shall be surrendered peacefully and in good repair subject to normal wear and tear.

Amendment to Lease with Option to Purchase, ¶ 4 (Plaintiffs' Exhibit C).

The debtors owned a business known as Glassy Junction, Inc. that operated a restaurant on the property at 717 South University Avenue. Debtors' attempts to obtain financing to purchase the property were unsuccessful and they were unable to exercise the option to purchase.  The restaurant continued to operate until February 2008.

John Karayanis testified that on February 13, 2008, he drove past Glassy Junction and noticed that moving trucks were outside the restaurant and that some of the restaurant's equipment was being removed.  According to Mr. Karayanis, when he stopped to ask Mr. Dhillon what was happening, Mr. Dhillon told him that he was "changing out some equipment" and that "it's none of your business." He further testified that he was unable to enter the restaurant and that although he and Susan tried to get an injunction barring the removal of fixtures and equipment, there was no judge available to issue a restraining order.[3]

Mr. Dhillon testified that he did not return to the restaurant after February 5, 2008, and he specifically denied being there on February 13th. Mr. Dhillon's testimony in this regard contradicts the testimony of both Mr. Karayanis and another witness, Tom Mitbo.  Mr. Mitbo testified that he works for a Carbondale law firm and that on February 13, 2008, between 3:30 and 4:00 p.m., he

---

[3] The plaintiffs initially filed a complaint for a preliminary injunction and a motion for a restraining order against the defendants in state court.  An amended complaint was subsequently filed and that complaint remains pending in state court.

personally served Mr. Dhillon - at the Glassy Junction restaurant - with a copy of the pleadings requesting a restraining order. In any event, on that very day - February 13, 2008 - P.J. Dhillon notified the plaintiffs by e-mail that he was immediately ceasing operation of the restaurant. (Plaintiffs' Exhibit E). Mr. Dhillon did not specify the reason for his decision, but from the evidence and testimony presented, the Court concludes that the decision was based in large part on the debtors' inability to obtain financing to purchase the property and/or to make rent payments.

On July 22, 2008, the plaintiffs filed a state court complaint against Steve Stearns, a restaurant equipment supplier, for conversion and trespass. The complaint alleged that on or about February 13, 2008, Mr. Stearns entered the restaurant and removed certain equipment and fixtures and damaged plaintiffs' property. Complaint, ¶ 5 (Defendants' Exhibit I). Stearns and the plaintiffs eventually settled the state court matter. In the "Settlement Agreement and Release," Steve Stearns admitted that he removed certain items from the plaintiffs' property but denied that he was liable to plaintiffs for damages. Nonetheless, in order to settle the matter, Mr. Stearns, d/b/a Stearns Food Service Equipment, agreed to pay the plaintiffs $6,700.00. Settlement Agreement and Release, ¶ B (Defendants' Exhibit I).

On June 15, 2010, P.S. & G.R., LLC and Glassy Junction, Inc. filed chapter 7 bankruptcy petitions. In each case, the trustee filed a no asset report and the cases were closed on August 23, 2010 and August 18, 2010, respectively. The debtors then filed an individual chapter 7 case on November 6, 2010 and the plaintiffs filed the instant complaint on February 15, 2011.

In Count I, plaintiffs allege that the debtors unlawfully removed and/or authorized the removal of equipment and fixtures from the restaurant and damaged the premises far beyond normal wear and tear. Plaintiffs allege that the debtors' actions were willful and malicious and that any resulting damages owed by the debtors are nondischargeable under 11 U.S.C. § 523(a)(6). In Count

4

II, plaintiffs allege that the debtors failed to keep or preserve recorded information including books, documents, records, and papers, from which the debtors' financial condition or business transactions could be ascertained. Plaintiffs further allege that the debtors failed to truthfully disclose the facts and circumstances surrounding their failure to keep and preserve information and records.

### MOTION TO DISMISS SURINDERJIT KAUR DHILLON

At the close of the plaintiffs' case, counsel for the defendants orally moved to dismiss Surinderjit Kaur Dhillon as a defendant on the basis that the plaintiffs failed to produce any evidence or testimony against her. The Court took the motion under advisement. After reviewing the pleadings and evidence in this case, as well as the testimony at trial, the Court finds good cause for granting the motion as to Count I of the complaint. The plaintiffs did not call Surinderjit Dhillon as a witness and otherwise presented no testimony or proof whatsoever that she participated in the removal or destruction of the plaintiffs' property. Accordingly, the defendants' motion to dismiss Surinderjit Dhillon is granted as to Count I only. The following section of the Court's Opinion applies solely to P.J. Dhillon.

### COUNT I – 11 U.S.C. § 523(a)(6)

In an action brought pursuant to § 523(a) of the Bankruptcy Code, the creditor seeking the determination of nondischargeability bears the burden of proof. *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007) (citing *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000)). The creditor must establish this proof by a preponderance of the evidence, *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991), which means that the "trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question." *In re Meyers*, 616 F.3d 626, 631 (7th Cir. 2010).

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C.

§523(a)(6). To prove nondischargeability under § 523(a)(6), the following three elements must be established by a preponderance of the evidence: (1) that the debtor intended to and caused an injury to the creditor or the creditor's property interest; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious. *In re Stelbrink*, 331 B.R. 790, 793 (Bankr.C.D.Ill. 2005) (citing *In re Lazzara*, 287 B.R. 714, 723 (Bankr.N.D.Ill. 2002)).  An injury is willful only if it is deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974 (1998).  If the injury is the result, but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable. *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012).  In *Jendusa-Nicolai v. Larsen*, the Seventh Circuit discussed the various meanings courts have given to the term "malicious."  The Court concluded that "whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury … is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Id*. at 324.

      The Court finds, based on the evidence and testimony presented, that the plaintiffs failed to prove the first element, namely, that P.J. Dhillon was the person who caused injury to the plaintiffs and their property.  The Court is convinced that at some point in time, the plaintiffs' property was wrongfully removed and their property damaged. The photographs taken by John Karayanis on February 19, 2008 and March 11, 2008, and submitted by the plaintiffs as Exhibits V and Z, portray the damage.  Unfortunately, the plaintiffs failed to prove that it was *P.J. Dhillon* who removed the property and caused the damage.  In fact, when the trial was over, it was not clear *who* was responsible.

P.J. Dhillon testified that he did remove some items from the restaurant, but only those items he had purchased for the Glassy Junction restaurant.[4] He also testified that he authorized Steve Stearns, the restaurant equipment supplier, to remove items that the restaurant was leasing from Mr. Stearns. It is not clear exactly when Mr. Stearns removed that property. Other facts surrounding the removal of property are unclear as well. Was P.J. Dhillon present on February 13, 2008, the day that John Karayanis observed equipment being removed from the restaurant? The Court believes that he was. Mr. Dhillon's testimony that he did not return to the restaurant after February 5, 2008 is simply not credible in light of the testimony from John Karayanis and Tom Mittbo that Mr. Dhillon was in fact there on February 13th. His mere presence at the restaurant on February 13, 2008, however, does not establish that he wrongfully removed and damaged the plaintiffs' property. Who else, if anyone, was present at the restaurant on that day? *Who* removed the equipment and what specific equipment was removed? Was equipment belonging to the plaintiffs removed on that day or on a different day? At the end of the trial, these questions remained unanswered.

The only thing the evidence did establish with any certainty was that at some point, Steve Stearns removed *some* property from the restaurant. Exactly which items he removed remains unclear. P.J. Dhillon testified only that Mr. Stearns "took too much." Surprisingly and inexplicably, the plaintiffs did not call Steve Stearns as a witness. In any event, Exhibit 2 attached to the plaintiff's state court complaint listed the items allegedly taken by Mr. Stearns. Notably, in the case now before the Court, the plaintiffs allege that P.J. Dhillon removed the very same property. The same list attached as Exhibit 2 to the plaintiffs' state court complaint is attached to the instant complaint, leaving the Court to guess whether it was Steve Stearns or P.J. Dhillon who removed and damaged the plaintiffs' property.

---

[4] Paragraph 4 of the Amendment to Lease with Option to Purchase was not clear as to what improvements and/or equipment must remain on the property. At trial, the plaintiffs failed to clarify this question.

The facts surrounding the damage to the apartments are even less clear. Susan Karayanis testified that the downstairs apartment was occupied by another tenant before it was leased to the Dhillons. She further testified that neither she nor John had been in the apartment between the occupancy of the prior tenant and that of the Dhillons. What was the condition of the apartments at the time they were leased to the Dhillons? In their post-trial brief, the plaintiffs argue that the photos included in an August 7, 2007 appraisal of the property (plaintiffs' Exhibit P) show the apartments as undamaged. The original photos, however, were not submitted, and the quality of the copies that are included in the appraisal is poor, making it difficult to determine the true condition of the apartments at that time.

Assuming that the apartments were in excellent condition in August 2007, other questions remain unanswered. The photos taken by John Karayanis on March 11, 2008 unquestionably depict filthy conditions in the apartments, but the plaintiffs did not present any proof as to *when* the damage occurred. Plaintiffs appear to argue that the damage occurred after August 7, 2007, the date of the appraisal and before March 11, 2008. If that is true, who, besides P.J. Dhillon, had access to the apartments during that period of time?[5] Clearly, Gary Dhillon had access. He testified that he sometimes stayed in the apartments when he was in Carbondale. In addition, John Karayanis testified that the cooks who worked at the restaurant sometimes slept in the apartments and that they remained on the property after P.J. Dhillon and his family left. Could the damage to the apartments (and to the restaurant for that matter) have been caused by the cooks? The plaintiffs did not address that question and offered no proof to refute that possibility.

---

[5] Mr. Karayanis first testified that the photos submitted as plaintiffs' Exhibit Z were taken on March 11, 2008, but later stated that perhaps he was mistaken and that the pictures may have been taken on February 19, 2008. Whether the photos were taken on February 19th or March 11th, the plaintiffs failed to prove that P.J. Dhillon had sole access to the apartments prior to either date.

In short, the plaintiffs failed to prove by a preponderance of the evidence that it was P.J. Dhillon who wrongfully removed equipment and damaged property. Even if the Court assumes for the sake of argument that P.J. Dhillon is responsible, the plaintiffs failed to prove that he acted deliberately or intentionally within the meaning of § 523(a)(6). It may be true that Mr. Dhillon did not take the proper steps to secure the plaintiffs' property, and in failing to do so, he was negligent. His negligence, in turn, may be the reason that the plaintiffs' equipment was wrongfully removed and their property left in a state of disrepair and filth. Negligence alone, however, is insufficient to sustain a finding of willful and malicious conduct under § 523(a)(6).

Finally, even assuming that P.J. Dhillon was responsible for the damage and that he acted willfully and maliciously, the plaintiffs failed to prove the amount of damages. Susan Karayanis testified that they borrowed approximately $65,000.00 to make repairs to the property. The evidence also revealed that tax liens and judgment liens had been filed against John and Susan and that those liens had to be satisfied. Without proof of the repairs and purchases made, the Court is left to guess what was actually done with the money they borrowed. Although Susan testified that she had receipts documenting how the money was spent, no receipts were provided to the Court or produced at trial.

Accordingly, for the reasons set forth above, judgment will enter in favor of the defendant, P.J. Dhillon, and against the plaintiffs on Count I of the complaint.

The Court's decision should not be interpreted to mean that it accepts P.J. Dhillon's and Gary Dhillon's testimony as completely truthful. P.J. Dhillon was not a credible witness. He was less than candid in his testimony and at times evasive. Likewise, Gary Dhillon's testimony was not always believable. For example, he testified that the photos submitted by the defendants as Exhibit J were taken by him, and further, that the photos depict the restaurant as it was when his family

9

vacated the property in February 2008. If the photos were taken in February 2008, why are the trees near the patio full with green foliage? The photos taken by John Karayanis in March 2008, one month later, show the surrounding trees with bare branches, leaving the Court to wonder whether Gary Dhillon's testimony that his photos were taken in February 2008 was truthful. Unfortunately, P.J. and Gary Dhillon's lack of candor was not enough to prove the plaintiffs' case. They had to prove that it was P.J. Dhillon who removed and damaged their property, and for the reasons set forth above, they simply failed to do so.

<u>COUNT II – 11. U.S.C. § 727(a)(3)</u>

In Count II of their complaint, the plaintiffs allege that the debtors' discharge should be denied under § 727(a)(3). In a proceeding objecting to discharge under § 727(a), the plaintiff has the burden of proving the objection by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge unless …
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case….

11 U.S.C. § 727(a)(3). In other words, the debtors must produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *In re Rothermel*, 370 B.R. 185, 187 (Bankr.C.D. Ill. 2007).

The plaintiffs' main point of contention is that the debtors failed to produce a receipt or other documentation identifying the restaurant property that they donated to charity. In response to question #7 on the debtors' Statement of Financial Affairs, the debtors listed various items that they donated to the SIKH Society of SC/New Orleans. The items are described as "left over" from the Glassy Junction restaurant and include small electrical items, miscellaneous furniture, kitchen equipment, fans, napkin holders, pots and pans, dry goods and groceries. Debtors value the items in the total amount of $13,360. The plaintiffs contend that the list is not detailed enough to allow them to determine whether the debtors disposed of property that rightfully belonged to the plaintiffs. They further contend that the debtors' failure to produce any records identifying the items, as well as Mr. Dhillon's misrepresentations at a 2004 examination regarding such records, constitute grounds for denying the debtors' discharge under § 727(a)(3).

Mr. Dhillon testified that he gave a receipt to his accountant to attach to the debtors' tax returns. The plaintiffs assert that they requested the receipt in discovery, but they offered no proof of that fact. In addition, the plaintiffs failed to take the proper steps to admit the testimony given by Mr. Dhillon at his 2004 examination, and the Court is therefore unable to consider such testimony.

The question the Court must decide is whether the debtors have supplied sufficient information "*from which [their] financial condition or business transactions might be ascertained*...." 11 U.S.C. § 727(a)(3) (emphasis added). The Court finds that they have. Section 704(a)(4) of the Bankruptcy Code requires the trustee to investigate the financial affairs of the debtors. The chapter 7 trustee testified that she carefully reviewed the debtors' petition and schedules and was satisfied with the information contained in those documents. While the Court is not bound by the trustee's findings, the Court finds that based on the trustee's testimony, as well as

11

the Court's own review of the facts and evidence in this case, the debtors have provided sufficient information for creditors to ascertain the debtors' financial condition.

Accordingly, judgment will enter in favor of the defendants and against the plaintiffs on Count II of the complaint.

See Order entered this date.

ENTERED: July 6, 2012

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE